# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MERCHANTS MORTGAGE | ) | |
| & TRUST CORPORATION, LLC, | ) | Bankruptcy Case |
| a Colorado limited liability company, | ) | No. 11-39455-MER |
| EIN 84-1296387, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S PREPACKAGED PLAN OF REORGANIZATION

Dated: November 16, 2011.

The Debtor proposes the following Prepackaged Plan of Reorganization pursuant to Section 1121(a) of the Bankruptcy Code.

**The Debtor is soliciting acceptance of its Prepackaged Plan of Reorganization before filing a Chapter 11 case as authorized pursuant to Section 1125(g) of the Code. If Plan classes 4, 5 and 6 vote to accept the Plan, the Debtor shall file a Chapter 11 Case in the above Court.**

You will receive subsequent notice of the filing of the Chapter 11 Case.

### ARTICLE I.
### Definitions

"Allowed Administrative Claim" shall mean an expense incurred after the Filing Date which is allowed by order of the Court and entitled to priority pursuant to Section 503 of the Code.

"Allowed Claim" shall mean (1) an unsecured Claim against the Debtor which is set forth in Debtor's bankruptcy schedules filed with the Court other than an unsecured Claim against the Debtor scheduled by the Debtor as disputed, contested, contingent or unliquidated, or (2) an unsecured proof of Claim against the Debtor which has been timely filed with the Court pursuant to Section 501 of the Code prior to the Bar Date, and with respect to which no objection to the allowance thereof has been timely interposed, or as to which any objection has been determined by Final Order; provided however that interest accrued after the Filing Date shall not be a part of any Allowed Claim unless otherwise provided in the Plan. Allowed Claims may include (a) Claims

arising from the rejection of executory contracts, and (b) deficiency Claims (if any) of the holders of Allowed Secured Claims.

"Allowed Interest" means an Interest in the Debtor represented by the number of Existing Preferred Units held by an Existing Preferred Unit Holder as set forth in **Appendix 2** attached hereto or the number of Existing Common Units held by an Existing Common Unit Holder as set forth in **Appendix 3** attached hereto or.

"Allowed Priority Claim" shall mean that portion, if any, of an Allowed Claim entitled to priority in payment under Section 507(a) of the Code. Allowed Priority Claims shall not include Allowed Administrative Claims.

"Allowed Secured Claim" shall mean an Allowed Claim secured by a lien or security interest on the assets of the Debtor where the lien or security interest has been properly perfected pursuant to applicable non-bankruptcy law and is not avoidable under the provisions of the Code.

"Amended and Restated Operating Agreement" shall mean the Debtor's operating agreement attached as **Exhibit B** to the Memorandum.

"Bar Date" shall mean the last date for filing proofs of Claim or proofs of Interest as established by order of the Court.

"Case" shall mean the Chapter 11 case if it is filed in the Court by the Debtor.

"Chapter 11" shall mean Chapter 11 of the Code.

"Claim" shall mean a claim against the Debtor existing at the Filing Date as defined in Section 101(5) of the Code.

"Code" shall mean Title I of the Bankruptcy Reform Act of 1978, 11 U.S.C. Sections 101 et seq., as amended, also known as the Federal Bankruptcy Code.

"Common A Units" shall mean the Debtor's new common A units to be issued effective as of the Unit Transfer Date to the Existing Preferred Unit Holders.

"Common B Units" shall mean the Debtor's new common B units to be issued effective as of the Unit Transfer Date to the Existing Common Unit Holders.

"Confirmation" shall mean the entry of an order by the Court confirming and approving the Plan in accordance with the Code.

"Confirmation Date" shall mean the date of Confirmation.

"Confirmation Order" shall mean the order of the Court confirming the Plan.

"Court" shall mean the United States Bankruptcy Court for the District of Colorado.

"Debentures" shall mean the following subordinated debentures issued by the Debtor: Series 2012AEX, Series 2012EX and Series 2016.

"Debenture Holders" shall mean the holders of the Debentures. A schedule of Debenture Holders is set forth in **Appendix 1** attached hereto and incorporated herein by reference. Each Debenture Holder is deemed to hold an Allowed Claim for amounts due at the Filing Date pursuant to his/her/its respective Debenture. The amount owing to each Debenture Holder at the Filing Date is set forth in **Appendix 1**. Accordingly, Debenture Holders need not file a proof of Claim with the Court.

"Debtor" shall mean Merchants Mortgage & Trust Corporation, LLC, a Colorado limited liability company.

"Disclosure Statement" shall mean the disclosure document, as it may be amended, describing the Plan as required to be filed by the Debtor and distributed to the various classes under the Plan as provided in Section 1125 of the Code.

"Disputed Claim" shall mean any Claim which has been scheduled by the Debtor in its bankruptcy schedules filed with the Court as disputed, contested, contingent, or unliquidated or any proof of Claim as to which an objection to the allowance thereof has been interposed and allowance or disallowance of such Claim has not been determined by a Final Order.

"Disputed Interest" shall mean any Interest which has been scheduled by the Debtor in its bankruptcy schedules filed with the Court as disputed, contested, contingent, or unliquidated or any proof of Interest as to which an objection to the allowance thereof has been interposed and allowance or disallowance of such Interest has not been determined by a Final Order.

"Effective Date" shall mean the fifteenth (15) calendar day after the Confirmation Date unless such day is a holiday or falls on a weekend in which event the Effective Date shall be the next following business day. The Debtor in its sole discretion may extend the Effective Date up to an additional twenty (20) business days.

"Existing Common Units" shall mean the Debtor's issued common units outstanding at the Filing Date.

"Existing Common Unit Holders" shall mean the holders of Existing Common Units. A schedule of Existing Common Unit Holders is set forth in **Appendix 3** attached hereto and incorporated herein by reference. Each Existing Common Unit Holder is deemed to hold an Allowed Interest based on the number of Existing Common Units held by such Existing Common Unit Holder as set forth in **Appendix 3**. Accordingly, Existing Common Unit Holders need not file a proof of Interest with the Court.

"Existing Preferred Units" shall mean the Debtor's issued preferred units outstanding at the Filing Date.

"Existing Preferred Unit Holders" shall mean the holders of Existing Preferred Units. A schedule of Existing Preferred Unit Holders is set forth in **Appendix 2** attached hereto and incorporated herein by reference. Each Existing Preferred Unit Holder is deemed to hold an Allowed Interest based on the number of Existing Preferred Units held by such Existing Preferred Unit Holder as set forth in **Appendix 2**. Accordingly, Existing Preferred Unit Holders need not file a proof of Interest with the Court.

"Filing Date" shall mean the date the Case is filed by the Debtor in the Court.

"Final Decree" shall mean the final decree entered by the Court pursuant to Section 350 of the Code closing the Case.

"Final Order" shall mean an order or a judgment as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending.

"Interest" means an equity interest in the Debtor represented by either the Existing Common Units or the Existing Preferred Units.

"Plan" shall mean this Prepackaged Plan of Reorganization filed by the Debtor, as it may be amended from time to time.

"Memorandum" shall mean the Private Placement Memorandum attached to the Disclosure Statement as **Schedule 2**.

"Options" shall mean the options to purchase Existing Common Units held by Gary D. Levine, Raymond T. Baker, Kimberly Hubbard, Donald L. Kortz and Edward C. Gruben.

"Preferred A Units" shall mean the Debtor's new preferred A units to be issued effective as of the Unit Transfer Date to the Debenture Holders.

"Unit Holders" shall mean the holders of the Preferred A Units, the Common A Units and the Common B Units.

"Unit Transfer Date" shall mean noon on December 31, 2011.

"Voting Deadline" means the last date for impaired classes to vote on the Plan. The Voting Deadline is set forth in the ballot, Disclosure Statement and Memorandum which accompany the Plan. From time to time and upon a request tendered by the holder of an Allowed Claim or an Allowed Interest, the Debtor in its sole discretion may extend in writing the Voting Deadline. Classes 1, 4, 5 and 6 are the only classes impaired under the Plan; and therefore only members of these classes are entitled to vote on the Plan. All other classes are not impaired by the Plan and are not entitled to vote on the Plan.

## ARTICLE II.
## Unclassified Allowed Administrative Claims

2.1     On the Effective Date, the Debtor shall pay Allowed Administrative Claims in cash in full or upon such other terms as may be agreed upon by the Debtor and the respective holder of an Allowed Administrative Claim, provided however that holders of Allowed Administrative Claims arising under Section 330 of the Bankruptcy Code [post-Filing Date professional fees] only shall be paid after the Court has entered its order approving the respective Allowed Administrative Claim and such order has become a Final Order.

2.2     All unpaid fees owing to the Office of the United States Trustee pursuant to 28 U.S.C. Section 1930 shall be paid in full on the later of the Effective Date or when due. The Debtor shall continue to pay such fees until the Court enters its Final Decree closing the Case.

## ARTICLE III.
## Classification Of Claims And Interests

3.1     <u>CREDITOR CLAIMS</u>

Class 1         Holders of Allowed Priority Claims

Class 2         Holders of Allowed Secured Claims:

                2.1     Vectra Bank Colorado, N.A.

                2.2     Steele Street Bank

                2.3     U.S. Bank N.A.

    2.4  Colorado Business Bank

    2.5  Bank of the West

    2.6  ARI Capital Partners, LLP

    2.7  Yosemite Participation Group, LLC

Class 3  Holders of Allowed Claims excluding the Allowed Claims held by the class 4 Debenture Holders

Class 4  Allowed Claims held by the Debenture Holders

3.2  <u>EQUITY INTERESTS</u>

Class 5  Allowed Interests of the Existing Preferred Unit Holders

Class 6  Allowed Interests of the Existing Common Unit Holders

# ARTICLE IV.
## Treatment Of Allowed Priority Claims Impaired Under The Plan

### Class 1
(Allowed Priority Claims)

4.1  Class 1 consists of the holders of Allowed Priority Claims.

4.2  Class 1 Allowed Priority Claims shall be paid in cash in full on the Effective Date of the Plan.

4.3  Class 1 is impaired under the Plan and is entitled to vote on the Plan.

# ARTICLE V.
## Treatment Of Allowed Secured Claims Not Impaired Under The Plan

### Sub-Class 2.1
(Vectra Bank Colorado, N.A.)

5.1     Sub-Class 2.1 consists of the Allowed Secured Claim held by Vectra Bank Colorado, N.A.

5.2     Sub-Class 2.1 shall retain unaltered all of its legal, equitable and contractual rights as they existed immediately before the Filing Date.

5.3     Sub-Class 2.1 is not impaired under the Plan and is not entitled to vote on the Plan.

### Sub-Class 2.2
(Steele Street Bank)

5.4     Sub-Class 2.2 consists of the Allowed Secured Claim held by Steele Street Bank.

5.5     Sub-Class 2.2 shall retain unaltered all of its legal, equitable and contractual rights as they existed immediately before the Filing Date.

5.6     Sub-Class 2.2 is not impaired under the Plan and is not entitled to vote on the Plan.

### Sub-Class 2.3
(U.S. Bank N.A.)

5.7     Sub-Class 2.3 consists of the Allowed Secured Claim held by U.S. Bank N.A.

5.8     Sub-Class 2.3 shall retain unaltered all of its legal, equitable and contractual rights as they existed immediately before the Filing Date.

5.9     Sub-Class 2.3 is not impaired under the Plan and is not entitled to vote on the Plan.

### Sub-Class 2.4
(Colorado Business Bank)

5.10    Sub-Class 2.4 consists of the Allowed Secured Claim held by Colorado Business Bank.

5.11     Sub-Class 2.4 shall retain unaltered all of its legal, equitable and contractual rights as they existed immediately before the Filing Date.

5.12     Sub-Class 2.4 is not impaired under the Plan and is not entitled to vote on the Plan.

### Sub-Class 2.5
(Bank of the West)

5.13     Sub-Class 2.5 consists of the Allowed Secured Claim held by Bank of the West.

5.14     Sub-Class 2.5 shall retain unaltered all of its legal, equitable and contractual rights as they existed immediately before the Filing Date.

5.15     Sub-Class 2.5 is not impaired under the Plan and is not entitled to vote on the Plan.

### Sub-Class 2.6
(ARI Capital Partners, LLP)

5.16     Sub-Class 2.6 consists of the Allowed Secured Claim held by ARI Capital Partners, LLP.

5.17     Sub-Class 2.6 shall retain unaltered all of its legal, equitable and contractual rights as they existed immediately before the Filing Date.

5.18     Sub-Class 2.6 is not impaired under the Plan and is not entitled to vote on the Plan.

### Sub-Class 2.7
(Yosemite Participation Group, LLC)

5.19     Sub-Class 2.7 consists of the Allowed Secured Claim held by Yosemite Participation Group, LLC.

5.20     Sub-Class 2.7 shall retain unaltered all of its legal, equitable and contractual rights as they existed immediately before the Filing Date.

5.21     Sub-Class 2.7 is not impaired under the Plan and is not entitled to vote on the Plan.

# ARTICLE VI.
## Treatment Of Allowed Claims Not Impaired Under The Plan

### Class 3
(Holders of Allowed Claims Excluding The Class 4
Allowed Claims Of The Debenture Holders)

6.1     Class 3 consists of all Allowed Claims not otherwise separately classified under the Plan.  Class 3 does not include the class 4 Allowed Claims represented by the Debentures.

6.2     Class 3 shall retain unaltered all of its legal, equitable and contractual rights as they existed immediately before the Filing Date.

6.3     Class 3 is not impaired under the Plan and is not entitled to vote on the Plan.

# ARTICLE VII.

## Treatment Of Allowed Claims Impaired Under The Plan

### Class 4
(Allowed Claims Of The Debenture Holders)

7.1     Class 4 consists of the Allowed Claims represented by the Debentures.

7.2     The class 4 Allowed Claims represented by the Debentures have been contractually subordinated prior to the Filing Date and therefore are subject to treatment under the Plan pursuant to Section 510(a) of the Code.

7.3     Effective as of the Unit Transfer Date, the Debenture Holders shall exchange their Debentures for Preferred A Units.  Each Debenture Holder shall receive one Preferred A Unit for each $1,000.00 of Allowed Claim represented by the principal amount of the Debentures held by such Debenture Holder.  The Debenture Holders and the number of Preferred A Units to be issued to each Debenture Holder are set forth in **Appendix 1** attached to the Plan.

7.4     At any time prior to five (5) years after the Confirmation Date, each Debenture Holder shall tender to the Debtor his/her/its original Debenture as a condition to the issuance of Preferred A Units to such Debenture Holder.  If a Debenture Holder is unable to present his/her/its original Debenture, such Debenture Holder may tender to the Debtor in lieu thereof a lost instrument bond. The Debtor, in its sole and absolute discretion, may accept the lost instrument bond in lieu of the original Debenture. Nothing herein shall require the Debtor to accept a lost instrument bond. Pursuant to Section 1143 of the Code, any Debenture Holder who fails to tender his/her/its original

Debenture to the Debtor on or before five (5) years after the Confirmation Date shall receive no distribution under the Plan; and such Debenture Holder shall receive nothing under the Plan on account of his/her/its Debenture.

       7.5       Effective with the Unit Transfer Date, the Debentures shall be canceled on the books and records of the Debtor.

       7.6       The exchange of the Debentures for the Preferred A Units is described in the Memorandum attached to the Disclosure Statement as **Schedule 2**.  In the event of a conflict between the Plan and the Disclosure Statement and/or Memorandum, the Plan shall control.

       7.7       Effective with the Unit Transfer Date, the business operations of the Debtor shall be governed by the terms and provisions of the Amended and Restated Operating Agreement attached as **Exhibit B** to the Memorandum.

       7.8       Class 4 is impaired under the Plan and is entitled to vote on the Plan.

## ARTICLE VIII.
## Treatment Of Allowed Interests Impaired Under The Plan

### Class 5
(Existing Preferred Unit Holders)

       8.1       Class 5 consists of the Allowed Interests represented by the Existing Preferred Units.

       8.2       Effective as of the Unit Transfer Date, the Existing Preferred Unit Holders shall exchange their Existing Preferred Units for Common A Units.  Existing Preferred Unit Holders shall receive one Common A Unit for each Existing Preferred Unit.  The Existing Preferred Unit Holders and the number of Common A Units to be issued to each Existing Preferred Unit Holder are set forth in **Appendix 2** attached to the Plan.

       8.3       At any time prior to five (5) years after the Confirmation Date, each Existing Preferred Unit Holder shall tender to the Debtor his/her/its original Existing Preferred Unit certificate as a condition to the issuance of Common A Units.  If an Existing Preferred Unit Holder is unable to present his/her/its original Existing Preferred Unit certificate, such Existing Preferred Unit Holder may tender to the Debtor in lieu thereof a lost instrument bond.  The Debtor, in its sole and absolute discretion, may accept the lost instrument bond in lieu of the original Existing Preferred Unit certificate.  Nothing herein shall require the Debtor to accept a lost instrument bond.  Pursuant to Section 1143 of the Code, any Existing Preferred Unit Holder who fails to tender his/her/its original Existing Preferred Unit certificate to the Debtor on or before five (5) years after the Confirmation

Date shall receive no distribution under the Plan; and such Existing Preferred Unit Holder shall receive nothing under the Plan on account of his/her/its Existing Preferred Units.

8.4 Effective with the Unit Transfer Date, the Existing Preferred Units shall be canceled on the books and records of the Debtor.

8.5 The exchange of the Existing Preferred Units for Common A Units is described in the Memorandum attached to the Disclosure Statement as **Schedule 2**. In the event of a conflict between the Plan and the Disclosure Statement and/or the Memorandum, the Plan shall control.

8.6 Effective with the Unit Transfer Date, the business operations of the Debtor shall be governed by the terms and provisions of the Amended And Restated Operating Agreement attached as **Exhibit B** to the Memorandum.

8.7 Class 5 is impaired under the Plan and is entitled to vote on the Plan.

**Class 6**
(Existing Common Unit Holders)

8.8 Class 6 consists of the Allowed Interests represented by the Existing Common Units.

8.9 Effective as of the Unit Transfer Date, the Existing Common Unit Holders shall exchange their Existing Common Units for Common B Units. Existing Common Unit Holders shall receive one Common B Unit for each Existing Common Unit. The Existing Common Unit Holders and the number of Common B Units to be issued to each Existing Common Unit Holder are set forth in **Appendix 3** attached to the Plan.

8.10 At any time prior to five (5) years after the Confirmation Date, each Existing Common Unit Holder shall tender to the Debtor his/her/its original Existing Common Unit certificate as a condition to the issuance of Common B Units. If an Existing Common Unit Holder is unable to present his/her/its original Existing Common Unit certificate, such Existing Common Unit Holder may tender to the Debtor in lieu thereof a lost instrument bond. The Debtor, in its sole and absolute discretion, may accept the lost instrument bond in lieu of the original Existing Common Unit certificate. Nothing herein shall require the Debtor to accept a lost instrument bond. Pursuant to Section 1143 of the Code, any Existing Common Unit Holder who fails to tender his/her/its original Existing Common Unit certificate to the Debtor on or before five (5) years after the Confirmation Date shall receive no distribution under the Plan; and such Existing Common Unit Holder shall receive nothing under the Plan on account of his/her/its Existing Common Units.

8.11 Effective with the Unit Transfer Date, the Existing Common Units shall be canceled on the books and records of the Debtor.

8.12    The exchange of the Existing Common Units for Common B Units is described in the Memorandum attached to the Disclosure Statement as **Schedule 2**. In the event of a conflict between the Plan and the Disclosure Statement and/or the Memorandum, the Plan shall control.

8.13    Effective with the Unit Transfer Date, the business operations of the Debtor shall be governed by the terms and provisions of the Amended And Restated Operating Agreement attached as **Exhibit B** to the Memorandum.

8.14    Class 6 is impaired under the Plan and is entitled to vote on the Plan.

### ARTICLE IX.
### Means for Execution of the Plan

9.1    On the Effective Date, the Debtor shall pay in cash in full Allowed Priority Claims.

9.2    On the Effective Date, the Debtor shall pay in cash in full Allowed Administrative Claims, provided however that holders of Allowed Administrative Claims arising under Section 330 of the Bankruptcy Code [post-Filing Date professional fees] only shall be paid after the Court has entered its order approving the respective Allowed Administrative Claim and such order has become a Final Order.

9.3    Effective as of the Unit Transfer Date, the Debtor shall issue:

    a.    The Preferred A Units to each of the Debenture Holders subject to the tender of the original Debenture to the Debtor by each respective Debenture Holder,

    b.    The Common A Units to each of the Existing Preferred Unit Holders subject to the tender of the original Existing Preferred Unit certificate to the Debtor by each respective Existing Preferred Unit Holder, and

    c.    The Common B Units to each of the Existing Common Unit Holders subject to the tender of the original Existing Common Unit certificate to the Debtor by each respective Existing Common Unit Holder.

9.4    Effective as of the Unit Transfer Date, the Debtor's existing operating agreement shall be amended and restated. A copy of the Debtor's Amended And Restated Operating Agreement is attached as **Exhibit B** to the Memorandum.

# ARTICLE X.
## General Provisions

      10.1    Pursuant to Sections 524 and 1141(d) of the Code and unless otherwise provided in the Plan, the Confirmation of the Plan and the distribution of property thereunder shall:

      a.    Void any judgment at any time obtained based on Claims or Interests held by the members of classes 1, 4, 5 and 6,

      b.    Constitute a discharge of all Claims or Interests held by the members of classes 1, 4, 5 and 6, and

      c.    Operate as an injunction against the initiation or continuation of any action to collect or recover Claims or Interests held by the members of classes 1, 4, 5 and 6. In particular, the members of classes 1, 4, 5 and 6 shall be permanently enjoined from taking any action directly or indirectly to enforce Claims or Interests against the Debtor, including but not limited to:

      i.    Commencing or continuing any civil action, mediation, arbitration or other proceeding,

      ii.    Enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, and

      iii.    Creating, perfecting, enforcing or foreclosing any lien or security interest in property vesting in the Debtor on the Effective Date.

      To the extent the Debtor successfully initiates an action or other proceeding in this Court or any other court of competent jurisdiction to enforce the injunctive provisions set forth in this paragraph 10.1, the Debtor shall be entitled to recover its reasonable attorney fees, filing fees and costs against the person or entity who is found to have violated such injunctive provisions.

      10.2    Neither the Debtor, nor any of its current or former members, officers, managers, directors, employees, advisors, attorneys, accountants, professionals, or agents, shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, relating to, or arising out of, the filing and administration of the Chapter 11 Case; the formulation, negotiation, or implementation of this Plan; the solicitation of acceptances of this Plan prior to or after the Filing Date; the pursuit of Confirmation of this Plan; the Confirmation of this Plan; the consummation of this Plan; or the administration of this Plan or the property to be distributed under this Plan; except for acts or omissions that are the result of fraud, gross negligence, or willful misconduct.

      10.3    Effective as of the Unit Transfer Date, all property of the Chapter 11 estate, including but not limited to causes of action, shall vest in the Debtor free and clear of any and all mortgages, liens, security interests, claims and/or interests of any kind or nature unless otherwise specifically provided for in the Plan or the Confirmation Order.

      10.4    The automatic stay of actions against the Debtor which became effective on the Filing Date shall terminate upon the Effective Date.

      10.5    **[RESERVED]**

      10.6    Debtor reserves the right to reopen this Chapter 11 case for any or all of the purposes set forth in paragraph 14.1 of this Plan.

      10.7    Notwithstanding any other provision of the Plan, no property shall be distributed under the Plan on account of a Disputed Claim or a Disputed Interest until and unless the Court enters its order allowing all or some portion of the Disputed Claim or Disputed Interest as an Allowed Claim or an Allowed Interest and such order has become a Final Order.

      10.8    All persons and entities bound by this Plan shall execute all documents, releases, assignments or other agreements necessary to implement the Plan. Subject to the terms of the Plan, if any necessary party refuses or fails to execute, deliver or join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Plan or perform any other act, including the satisfaction or release of a lien necessary to consummation of the Plan, or execution of an assignment pursuant to the Plan, the Court may order the same or order the Clerk of the Court to so execute the document, release, assignment or other agreement.

      10.9    The Debtor currently is managed by a management committee comprised of seven managers. Pursuant to the Debtor's current operating agreement:

        a.    Three of the managers are appointed by L. Gold Corp.,

        b.    Two of the managers are appointed by Gary D. Levine, President of the Debtor;

        c.    One manager is appointed by the person holding the position of Chief Executive Officer (which presently is Gary Levine); and

        d.    One manager is appointed by Raymond T. Baker, who controls a company that is a significant Existing Common Unit Holder.

The current managers and executive officers of the Debtor and their <u>cash compensation</u> are set forth below. The Memorandum contains a detailed description of the non-cash compensation paid to managers and executive officers. Effective with the Unit Transfer Date, the following persons shall continue to serve as managers and executive officers until the election described below (hereafter the "Initial Members of the Management Committee").

| Name | Position | Annual Compensation | |
|---|---|---|---|
| Gary D. Levine | President, Chief Executive Officer and Manager | President Manager | $ 228,000 $      00 |
| Justin Land | Executive Vice President | | $145,000 |
| Kimberly L. Hubbard | Executive Vice President | | $150,000 |
| Jack Keane | Chief Financial Officer and Manager | CFO Manager | $120,000 $      00 |
| Edward C. Gruben | Manager | | $   6,000 |
| Raymond T. Baker | Manager | | $   6,000 |
| Gerald S. Gray | Manager | | $   6,000 |
| Donald L. Kortz | Manager | | $   6,000 |
| Brett Perry | Manager | | $   6,000 |

The Amended and Restated Operating Agreement provides that:

    a.    The holders of the Preferred A Units will appoint two managers to the management committee;

    b.    The holders of the Common A Units will appoint one manager to the management committee;

    c.    The holders of the Common B Units will appoint two managers to the management committee;

   d.  Gary D. Levine will appoint one manager to the management committee; and

   e.  L. Gold Corp. will appoint one manager to the management committee.

  The Initial Members of the Management Committee shall within 60 days following their initial appointments set forth above (which for avoidance of doubt shall be within 60 days following the Confirmation Date) nominate the managers that are to be appointed by the Unit Holders as described above. The Unit Holders shall then within 60 calendar days thereafter hold a meeting called for such purpose to either (i) elect such nominees, or (ii) elect other nominees as "write in" candidates at the meeting.

  Thereafter, the Debtor may hold elections to elect one or more new managers as hereinafter provided: (i) within 90 days after the vacancy of a manager as a result of such manager's death, incapacitation or resignation, (ii) within 30 days after the determination of the management committee, at its discretion, to hold a meeting to elect one or more new managers to the management committee, and (iii) within 30 days following the receipt of written notification from either 33% of the holders of Preferred A Units or 33% of the holders of Common A Units or 33% of the holders of Common B Units requesting that the Debtor hold a meeting of their respective class of units to elect new manager(s) to the management committee and to remove one or more of the then existing managers elected by the respective holders of such class of units.

  10.10 Neither BD Funding nor the Debtor's subsidiary, Merchants Funding AZ, LLC, nor any of their respective assets, is covered or otherwise effected by this Plan.

  10.11 After Confirmation, the Debtor may retain professionals without Court approval; and may compensate professionals for services rendered after Confirmation without Court approval.

  10.12 Effective as of the Unit Transfer Date, the Options shall be terminated and the holders of the Options shall hold no Claims on account of the termination of the Options.

## ARTICLE XI.

**Provision For Assumption Of Unexpired Leases And Other Executory Contracts**

  11.1 Effective as of the Unit Transfer Date, the Debtor shall assume all unexpired leases and executory contracts to which it is a party ("collectively the "Executory Contracts"), including but not limited to, the Executory Contracts set forth in **Appendix 4** attached to the Plan. The other parties to such Executory Contracts shall retain all rights arising under such Executory Contracts; and the Confirmation of the Plan shall not impair, modify, alter, or diminish in any manner the rights of the other parties to such Executory Contracts. Notwithstanding anything to the contrary in the

Plan, any and all liens and encumbrances (and filings evidencing such liens and encumbrances) held by the other parties to such Executory Contracts shall remain unaffected by the Plan.

## ARTICLE XII.
## Claims Administration

12.1   The Debtor shall review all proofs of Claim and proofs of Interest filed in the Case and file objections thereto not later than thirty (30) days after the Bar Date.

12.2   If the Debtor does not file an objection to a proof of Claim or proof of Interest on or before thirty (30) days after the Bar Date, or such other date as established by order of the Court, the proof of Claim or proof of Interest automatically shall be deemed allowed.

12.3   **[RESERVED]**

## ARTICLE XIII.
## Issuance of Securities Under The Plan

13.1   The Plan provides for the issuance of securities effective as of the Unit Transfer Date. Such securities will be exchanged for Claims and Interests held by classes 4, 5 and 6. The securities issued under the Plan, consisting of the Preferred A Units, the Common A Units and the Common B Units, shall be issued pursuant to the Memorandum and Section 1145 of the Code.

## ARTICLE XIV.
## Retention Of Jurisdiction

14.1   The court shall retain jurisdiction:

- a.   To determine any and all objections to the allowance of Claims and Interests, and

- b.   To insure the purposes and intent of the Plan are carried out, and

- c.   To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, and

- d.   To enforce and interpret the terms and conditions of the Plan, and

- e.   To enter orders modifying the Plan, and

    f.    To determine disputes raised before or after the Confirmation Date by adversary proceedings or contested hearings, and

    g.    To hear any action or proceeding, including pending actions and proceedings, brought by the Debtor under the provisions of the Code or other applicable law, whether initiated by adversary proceeding or contested matter, and

    h.    To enter a Final Decree concluding and closing this Case.

## ARTICLE XV.
## Cram Down

15.1    If any impaired class of Claims or Interests rejects the Plan, or is deemed to have rejected the Plan, the Debtor requests the Court confirm the Plan pursuant to the cram down provisions of Section 1129(b) of the Code.

Dated: November 16, 2011

                      Merchants Mortgage & Trust Corporation, LLC, a limited liability company, Debtor

              By:    s/s Gary Levine
                      Gary Levine, President

INSOLVENCY COUNSEL FOR THE DEBTOR:

Laufer and Padjen LLC
Joel Laufer, Esq. #7728
5290 DTC Parkway
Suite 150
Englewood, CO 80111
Telephone (303) 830-3172
Facsimile (303) 830-3135
jl@jlrplaw.com

## APPENDICES

| | |
|---|---|
| Appendix 1 | Schedule of Debenture Holders |
| Appendix 2 | Schedule of Existing Preferred Unit Holders |
| Appendix 3 | Schedule of Existing Common Unit Holders |
| Appendix 4 | Schedule of Executory Contracts |