# DISCLOSURE STATEMENT

Dated: November 16, 2011

REGARDING THE PRE-BANKRUPTCY SOLICITATION OF VOTES
WITH RESPECT TO A PREPACKAGED PLAN OF REORGANIZATION OF

## MERCHANTS MORTGAGE & TRUST CORPORATION, LLC

## I.  Introduction

Merchants Mortgage & Trust Corporation, LLC (the "Debtor") is sending you (1) this Disclosure Statement (the "Disclosure Statement"), (2) the Debtors's Prepackaged Plan of Reorganization dated November 16, 2011 ("Plan")(attached hereto as **Schedule 1**), (3) Private Placement Memorandum ("Memorandum") (attached hereto as **Schedule 2**), and (4) if you are a member of a class entitled to vote on the Plan, a ballot ("Ballot").  You are receiving the foregoing documents because you may be a creditor and/or an equity holder of the Debtor.

Capitalized terms not otherwise defined in this Disclosure Statement shall have the meaning as defined in the Plan.  **It is important that all creditors and equity holders review and understand the terms defined in the Plan.**

If you are not a creditor or equity holder of the Debtor, you need not take further action.

**This solicitation ("Solicitation") of votes is being conducted to obtain sufficient acceptances of the Plan prior to the Debtor filing a voluntary Chapter 11 bankruptcy case ("Case") pursuant to Title 11 of the United States Code ("Bankruptcy Code").**  The Debtor expects to file the Case in the United States Bankruptcy Court for the District of Colorado ("Bankruptcy Court").  This pre-bankruptcy Solicitation is being made prior to the Filing Date pursuant to Section 1125(g) of the Bankruptcy Code.

**Brief Explanation of Chapter 11 of the Bankruptcy Code**

Chapter 11 is the principal reorganization Chapter of the Bankruptcy Code.  Pursuant to Chapter 11, the Debtor's business affairs may be reorganized for the benefit of its creditors and equity holders.  The Plan is the legal document which accomplishes the reorganization.  In particular, the Plan places creditors and equity holders in separate classes and provides for the treatment of such creditors and equity holders in each of these classes.

**Preparation of the Plan and Disclosure Statement**

This Plan and Disclosure Statement have been prepared by the Debtor with the assistance of the following counsel:

| Joel Laufer, Esq. | Henry F. Schlueter, Esq. | George C. Howell, III |
|---|---|---|
| Laufer and Padjen LLC | David Stefanski, Esq. | Hunton & Williams LLP |
| 5290 DTC Parkway | Schlueter & Associates, P.C. | 951 E. Byrd Street |
| Suite 150 | 1050 17th St., Suite 150 | Richmond, VA 23219 |
| Englewood, CO 80111 | Denver, CO 80265 | Telephone: 804 788 8793 |
| Telephone:  303 830 3172 | Telephone: 303 292 3883 | Facsimile: 804 343 4535 |
| Facsimile:  303 830 3135 | Facsimile: 303 296 8880 | ghowell@hunton.com |
| jl@jlrplaw.com | das@schlueterintl.com | |
| | | |
| INSOLVENCY COUNSEL | SECURITIES COUNSEL | TAX COUNSEL |

**Transmittal of Plan, Disclosure Statement and Ballot**

The Debtor is furnishing this Disclosure Statement and Plan to all of its known creditors and equity holders.  If you are entitled to vote on the Plan, the Debtor also is furnishing you with a Ballot. The Disclosure Statement is to be used by the Debtor's creditors and equity holders solely in connection with their evaluation of the Plan. Use of this Disclosure Statement for any other purpose is not authorized.  This Disclosure Statement may not be reproduced or provided to anyone other than advisors to the recipient without the prior written consent of the Debtor.

**Voting Deadline**

**The Voting Deadline ("Voting Deadline") to accept or reject the Plan is noon Mountain Standard Time on December 19, 2011.**  Ballots accepting or rejecting the Plan must be received by the Voting Deadline to be counted.  In the sole discretion of the Debtor, the Voting Deadline may be extended in writing on a creditor by creditor or equity holder by equity holder basis.  A Ballot will be counted if it (i) is received on or before the Voting Deadline, (ii) has been duly completed,  (iii) has been duly executed, (iv) has been tendered by the holder of an Allowed Claim or an Allowed Interest, and (v) the person or entity tendering the Ballot is a member of a class entitled to vote on the Plan.  If a Ballot is received that does not reflect on its face that the creditor or equity holder is either accepting or rejecting the Plan, such a Ballot will be deemed to be an acceptance of the Plan. **Ballots may be submitted by mail, hand delivery, facsimile or electronically to the Debtor's insolvency counsel described above**.

**Filing of Chapter 11 Case**

As described below, three classes are entitled to vote on the Plan.  If these three classes accept the Plan pursuant to this Solicitation, Debtor, in its sole discretion, shall file its Chapter 11 Case in the Bankruptcy Court.  The Debtor anticipates filing its Chapter 11 Case prior to December 24, 2011.

**Filing of Plan and Disclosure Statement with the Bankruptcy Court**

At or shortly after the Filing Date of the Chapter 11 Case, the Debtor expects promptly to (1) file the Plan and Disclosure Statement with Bankruptcy Court, (2) seek an order of the Bankruptcy Court approving (i) this Disclosure Statement as having contained "adequate information" pursuant to Section 1125(a) of the Bankruptcy Code effective as of the date of this Disclosure Statement, and (ii) the pre Filing Date Solicitation as having been in compliance with Section 1125(b) and (g) of the Bankruptcy Code, and (3) seek an order of the Bankruptcy Court confirming and approving the Plan described herein.  As of the date of this Disclosure Statement, the Plan, this Disclosure Statement and the Memorandum have not been filed with or reviewed by the Bankruptcy Court or the Securities and Exchange Commission or any state securities commision.  Because no Chapter 11 Case has yet been commenced, this Disclosure Statement and the Memorandum have not been approved by the Bankruptcy Court as containing "adequate information" within the meaning of Section 1125(a) of the Bankruptcy Code.

**Summary of the Plan Treatment of Creditors and Equity Holders**

| Class | Members of Class | Voting | Plan Treatment |
|-------|-----------------|--------|----------------|
| Class 1 | Allowed Priority Claims | Yes | Paid in full |
| Class 2 | Allowed Secured Claims | No | Not impaired and retain unaltered all legal, equitable and contractual rights existing immediately prior to the Filing Date |
| Class 3 | Allowed Claims excluding the class 4 Allowed Claims of the Debenture Holders | No | Not impaired and retain unaltered all legal, equitable and contractual rights existing immediately |

–3–

| | | | prior to the Filing Date |
|---|---|---|---|
| Class 4 | Debenture Holders | Yes | Impaired and exchanging Debentures for Preferred A Units |
| Class 5 | Existing Preferred Unit Holders | Yes | Impaired and exchanging Existing Preferred Units for Common A Units |
| Class 6 | Existing Common Unit Holders | Yes | Impaired and exchanging Existing Common Units for Common B Units |

**Private Placement Memorandum**

The Memorandum is attached to this Disclosure Statement as **Schedule 2**. The Memorandum describes in detail the Plan treatment of classes 4, 5 and 6. **The members of classes 4, 5 and 6 are urged to carefully review the Memorandum before casting a vote on the Plan.**

**Voting and Acceptance of the Plan**

Each impaired class constitutes a separate class for voting and distribution under the Plan. Only creditors and equity holders which have been placed in impaired classes under the Plan are entitled to vote on the Plan.

Unimpaired Classes

Classes 2 and 3 are not impaired under the Plan and are not entitled to vote on the Plan. No Ballot is being transmitted to these classes. These classes shall retain unaltered all of their legal, equitable and contractual rights as they existed immediately prior to the Filing Date. In sum, these classes are not effected by the Plan.

– 4 –

Impaired Classes

Class 1 - Allowed Priority Claims

Class 1 consists of Allowed Priority Claims which are certain pre Filing Date unsecured Claims given priority in payment pursuant to the Bankruptcy Code. The Debtor does not believe any creditor holds an Allowed Priority Claim. Class 1 will have accepted the Plan if at least two-thirds (2/3) in dollar amount and a majority in number of the holders of Allowed Priority Claims voting on the Plan have cast a vote to accept the Plan.

Class 4 - Debenture Holders

Class 4 is an impaired creditor class consisting of the Debenture Holders. Class 4 will have accepted the Plan if at least two-thirds (2/3) in dollar amount and a majority in number of the Debenture Holders voting on the Plan have cast a vote to accept the Plan.

Class 5 - Existing Preferred Unit Holders

Class 5 is an impaired class of equity holders consisting of the Existing Preferred Unit Holders. Class 5 will have accepted ths Plan if at least two-thirds of the Existing Preferred Units held by the Existing Preferred Unit Holders voting on the Plan have cast a vote to accept the Plan.

Class 6 - Existing Common Unit Holders

Class 6 is an impaired class of equity holders consisting of the Existing Common Unit Holders. Class 5 will have accepted ths Plan if at least two-thirds of the Existing Common Units held by the Existing Common Unit Holders voting on the Plan have cast a vote to accept the Plan.

**Proofs of Claims, Proofs of Interest and the Bar Date**

Unimpaired Classes

Classes 2 and 3 are not impaired under the Plan and should not file a proof of Claim.

Impaired Classes

The Debtor shall file a motion with Bankruptcy Court at or shortly after the Filing Date requesting the Bankruptcy Court set a Bar Date for the members of classes 1, 4, 5 and 6 to file a proof of Claim or proof of Interest. You will be given subsequent notice of the Bar Date.

–5–

Class 1 - Allowed Priority Claims

Any creditor asserting an Allowed Priority Claim must file a proof of Claim on or before the Bar Date.

Classes 4, 5 and 6

The members of classes 4, 5 and 6 need not file a proof of Claim or proof of Interest if their respective Claim or Interest is correctly set forth in the following Appendices attached to the Plan:

**Appendix 1** - Schedule of class 4 Debenture Holders

**Appendix 2** - Schedule of class 5 Existing Preferred Unit Holders

**Appendix 3** - Schedule of class 6 Existing Common Unit Holders

If you are member of classes 4, 5 and/or 6 and you disagree with the scheduled dollar amount of your claim or the number of equity units that you hold as described in the Appendices above, you must file a proof of Claim or Proof of Interest failing which you will be bound by the dollar amount of your claim and/or the number of equity units set forth in the Appendices above.

The Debtor may file objections to a proof of Claim or proof of Interest not later than 30 days after the Bar Date.  If the Company does not file an objection to a proof of Claim or proof of Interest, such proof of Claim or proof of Interest automatically shall be deemed an Allowed Claim or an Allowed Interest.

If the Debtor files an objection to a proof of Claim or a proof of Interest, the holder of such a Disputed Claim or Disputed Interest shall receive no distributions under the Plan until such time as the Disputed Claim or Disputed Interest is determined by the Bankruptcy Court to be an Allowed Claim or an Allowed Interest pursuant to a Final Order.

**Confirmation of the Plan**

The legal requirements for Confirmation of the Plan are complex.  Accordingly, creditors and equity holders are urged to consult with their counsel respecting the requirements for Confirmation of the Plan.

**Effect Of Confirmation And Discharge**

If the Bankruptcy Court orders Confirmation of the Plan, the Debtor will be discharged of the pre-Filing Date Claims and/or Interests held by classes 1, 4, 5 and 6 pursuant to Section 1141(d) of

– 6 –

the Bankruptcy Code. No other creditor Claims shall be discharged upon Confirmation. Specifically, the Claims held by the members of classes 2 and 3 will not be discharged upon Confirmation of the Plan. Confirmation of the Plan makes the Plan binding upon the Debtor and its creditors and equity holders. If the Bankruptcy Court approves the Plan, the Plan will be binding upon you even if you did not vote on the Plan or you voted against the Plan.

**Confirmation Hearing**

After the filing of the Plan and Disclosure Statement with the Bankruptcy Court, the Bankruptcy Court will schedule a hearing to consider approval of the Plan. You will receive a subsequent notice of the date and time of said hearing. You are not required to attend the Confirmation hearing.

**Issuance of Securities Under the Plan**

The Plan provides for the issuance of securities pursuant to the Memorandum and Section

1145 of the Bankruptcy Code. The members of classes 4, 5 and 6 are receiving securities under the Plan and should carefully read the Memorandum attached hereto as **Schedule 2**.

**Unit Transfer Date**

The Plan will be effective as of the Unit Transfer Date which is defined in the Plan as noon on December 31, 2011.

**Disclaimers**

FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THIS DISCLOSURE STATEMENT, THE PLAN AND THE MEMORANDUM IN THEIR ENTIRETY. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT OR THE MEMORANDUM, THE TERMS OF THE PLAN ARE CONTROLLING.

THE DEBTOR HAS NOT COMMENCED A CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AT THIS TIME. BECAUSE NO BANKRUPTCY CASE HAS BEEN COMMENCED, THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE. NONETHELESS, IF A CHAPTER 11 CASE IS SUBSEQUENTLY FILED, THE DEBTOR INTENDS TO SEEK PROMPTLY AN ORDER OF THE BANKRUPTCY COURT APPROVING THIS DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND DETERMINING THAT THE PRE FILING DATE SOLICITATION OF VOTES ON THE PLAN BY MEANS OF THIS DISCLOSURE STATEMENT AND THE MEMORANDUM COMPLIED WITH SECTION 1126(b) and (g) OF THE BANKRUPTCY CODE.

THE DEBTOR INTENDS TO CONTINUE OPERATING ITS BUSINESS IN CHAPTER 11 IN THE ORDINARY COURSE AND WILL PAY ANY DEBTS INCURRED AFTER THE FILING DATE IN THE ORDINARY COURSE OF BUSINESS.

THE DEBTOR INTENDS TO SEEK TO EFFECTUATE THE PLAN ON THE UNIT TRANSFER DATE.  HOWEVER, THERE CAN BE NO ASSURANCE AS TO WHEN AND WHETHER CONFIRMATION OF THE PLAN WILL OCCUR.

NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE PLAN OR THE SOLICITATION TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION REGARDING THIS DISCLOSURE STATEMENT OR THE MEMORANDUM OR THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE AND THE MEMORANDUM. IF SUCH INFORMATION OR REPRESENTATION IS GIVEN OR MADE, IT MAY NOT BE RELIED UPON.

THIS DISCLOSURE STATEMENT AND THE MEMORANDUM DO NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. ANY CREDITOR OR EQUITY HOLDER DESIRING ANY SUCH ADVICE OR ANY OTHER ADVICE SHOULD CONSULT WITH HIS/HER/ITS OWN ADVISORS.

THIS DISCLOSURE STATEMENT AND THE MEMORANDUM MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR TO REJECT THE PLAN.  NOTHING STATED THEREIN CONSTITUTES AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY.  NOTHING THEREIN SHALL BE ADMISSIBLE IN ANY BANKRUPTCY COURT, CASE, ARBITRATION OR OTHER PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED A REPRESENTATION OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR ITS CREDITORS OR EQUITY HOLDERS.

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREIN, ALL INFORMATION CONTAINED HEREIN HAS BEEN PROVIDED BY THE DEBTOR. THE DEBTOR HAS MADE EVERY EFFORT TO INSURE THE INFORMATION CONTAINED HEREIN IS ACCURATE. COUNSEL FOR THE DEBTOR MAKES NO REPRESENTATIONS AS TO THE ACCURACY OF THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT OR THE MEMORANDUM.

THE OFFER OF SECURITIES AS PROVIDED IN THE PLAN SHALL CONSTITUTE A PUBLIC OFFERING AS PROVIDED IN SECTION 1145(c) OF THE CODE.  A REGISTRATION STATEMENT RELATING TO THE SECURITIES TO BE ISSUED UNDER THE PLAN WILL NOT BE FILED WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION. THE ISSUANCE OF SECURITIES UNDER THE PLAN IS EXEMPT FROM REGISTRATION WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION AS PROVIDED IN SECTION 1145(a) OF THE BANKRUPTCY CODE.  THIS DISCLOSURE STATEMENT AND THE MEMORANDUM HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE

SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS ANY SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED THEREIN.

PURSUANT TO SECTION 1125(e) OF THE BANKRUPTCY CODE, ANY PERSON, INCLUDING THE OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS AND ACCOUNTANTS OF THE DEBTOR WHO SOLICITS OR PARTICIPATES IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE IN THE OFFER OF SECURITIES UNDER THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT AND MEMORANDUM SHALL NOT BE LIABLE ON ACCOUNT OF SUCH SOLICITATION OR PARTICIPATION FOR VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION ENACTED BY THE UNITED STATES OR ONE OF ITS STATES GOVERNING THE OFFER, ISSUANCE, SALE, OR PURCHASE OF SECURITIES.

THE INFORMATION CONTAINED IN THIS STATEMENT IS AS OF THE DATE SET FORTH BELOW.

**The date of this Disclosure Statement and the Memorandum is November 16, 2011.**

# TABLE OF CONTENTS

I.   DESCRIPTION OF THE DEBTOR AND ITS BUSINESS OPERATIONS AND
     EVENTS LEADING UP TO THE ANTICIPATED CHAPTER 11 FILING  . . . . . . . . 13

II.  THE PREPACKAGED CHAPTER 11 PLAN, DISCLOSURE STATEMENT
     AND THE MEMORANDUM  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     A. Decision To Reorganize Under Chapter 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     B. Pre-Filing Date Solicitation Of The Prepackaged Plan . . . . . . . . . . . . . . . . . . . . . 13

     C. Anticipated Filing Date Of The Chapter 11 Case . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     D. Pleadings Anticipated To Be Filed On The Filing Date . . . . . . . . . . . . . . . . . . . . . 13

     E. Pending Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III. DESCRIPTION OF THE PLAN  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     A.     Plan Treatment Of Creditors And Equity Holders  . . . . . . . . . . . . . . . . . . . . . 15

            1.   Unclassified Allowed Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . 15
            2.   Class 1 - Allowed Priority Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            3.   Class 2 - Allowed Secured Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            4.   Class 3 - Allowed Claims Except The Class 4 Allowed Claims . . . . . . . . . . . 16
            5.   Class 4 - Allowed Claims Of The Debenture Holders . . . . . . . . . . . . . . . . . . 16
            6.   Class 5 - Allowed Interests Of The Existing Preferred Unit Holders . . . . . . . 17
            7.   Class 6 - Allowed Interests Of The Existing Common Unit Holders . . . . . . . 17

     B. Other Plan Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            1.   Amended And Restated Operating Agreement . . . . . . . . . . . . . . . . . . . . . . . 17
            2.   Managers, Officers and Directors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            3.   Termination of Bankruptcy Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            4.   Discharge of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            5.   Permanent Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            6.   Release Of Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            7.   Vesting Of Property In The Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            8.   Non Voting Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            9.   Plan Modification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
            10.  Retention Of Jurisdiction By The Bankruptcy Court . . . . . . . . . . . . . . . . . . . 21

IV.  EXECUTORY CONTRACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.   MEANS FOR EXECUTION OF THE PLAN  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.    FINANCIAL STATEMENTS AND CASH FLOW PROJECTIONS . . . . . . . . . . . . . . 22

    A. Financial Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B. Projections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    C. Pro Forma Balance Sheet as of the Unit Transfer Date . . . . . . . . . . . . . . . . . . . . . . 22

VII.   STANDARDS FOR CONFIRMATION OF THE PLAN . . . . . . . . . . . . . . . . . . . . . . 22

    A.  Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B. Voting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    C.  Confirmation Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        1.   Feasibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        2.   Comparison To Chapter 7 Liquidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VIII.  ALTERNATIVES TO CONFIRMATION OF THE PLAN . . . . . . . . . . . . . . . . . . . . . 24

IX.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## SCHEDULES

1.      Prepackaged Plan of Reorganization

2.      Private Placement Memorandum

3.      Description of the Debtor and its Business Operations and Events Leading up to the Anticipated Chapter 11 Filing

4.      Pending Litigation

5.      Class 2 Allowed Secured Claims

6.      Confidential Comparative Unaudited Financial Statements for the Nine Months Ending September 30, 2011 and September 30, 2010

7.      Confidential Consolidated Financial Statements for the Years Ending December 31, 2010 and December 31, 2009

8.      Projections of Certain Financial Data Following Consummation of the Plan

9.      Pro Forma Balance Sheet as of the Unit Transfer Date Based on September 30, 2011 Information

10.     Liquidation Analysis

## I.  DESCRIPTION OF THE DEBTOR AND ITS BUSINESS OPERATIONS AND EVENTS LEADING UP TO THE ANTICIPATED CHAPTER 11 FILING

For a description of the Debtor and its business operations and the events leading up to the Debtor's anticipated Chapter 11 filing, see **Schedule 3** attached hereto.

## II.   THE PREPACKAGED CHAPTER 11 PLAN, DISCLOSURE STATEMENT AND THE MEMORANDUM

### A.    Decision To Reorganize Under Chapter 11

As discussed in Article I above, the Debtor and its managers concluded that a business restructuring was necessary and in the best interest of its creditors and equity holders.  Accordingly, the Debtor and its managers consulted with counsel to consider the various means available for implementing the reorganization.  After much deliberation and consideration, the Debtor and its managers concluded that the best means of accomplishing the proposed reorganization was to file a Chapter 11 Case and propose a plan of reorganization.  Management also concluded that a prepackaged plan of reorganization ("Plan") was the best means of accomplishing the reorganization because the professional fees and costs incurred by the Debtor would be substantially reduced and the Debtor likely would remain in the Chapter 11 Case for a much shorter duration.

### B. Pre-Filing Date Solicitation Of The Prepackaged Plan

The Debtor and its counsel prepared the materials you are receiving as part of this solicitation. These materials consist of this Disclosure Statement, the Plan, the Memorandum and a Ballot or Ballots if you are entitled to vote on the Plan.  Please review these materials carefully so that you can obtain a full understanding the of the Debtor's proposed reorganization and make an informed decision when voting on the Plan.

### C.    Anticipated Filing Date Of The Chapter 11 Case

If Plan classes 4, 5 and 6 accept the Plan, the Debtor anticipates filing the Chapter 11 Case in the Bankruptcy Court shortly after the Voting Deadline.  You will receive subsequent notice of the Chapter 11 Filing Date.  The Debtor anticipates that the Chapter 11 case will be filed no later than December 24, 2011.

### D.    Pleadings Anticipated To Be Filed On The Filing Date

The Debtor anticipates filing the following pleadings with the Bankruptcy Court on or shortly after the Filing Date:

1. Chapter 11 petition;

2. Bankruptcy Schedules, Statement of Affairs, List of 20 Largest Creditors and Creditor Matrix;

3. Plan, Disclosure Statement and Memorandum;

4. Tabulation Report regarding Ballots received voting on the Plan;

5. Form of proposed Confirmation order;

6. Motion requesting the Bankruptcy Court set a combined hearing on the adequacy of the Disclosure Statement and Confirmation and approval of the Plan;

7. Motion to fix claims Bar Date;

8. Motions and/or stipulations regarding the use of cash collateral;

9. Motion directing the Office of the United States Trustee not to convene a meeting of creditors or equity security holders;

10. Motion to waive application of Section 345 of the Bankruptcy Code regarding the deposit or investment of funds;

11. Motion to waive application of the provisions of the United States Trustee's Reporting Requirements;

12. Applications to retain professionals;

13. Motion regarding continuation of utility service; and

14. Such other motions and pleadings as the Debtor deems necessary.

**E. Pending Litigation**

For a description of the Debtor's pending litigation, see **Schedule 4** attached hereto.

## III.  DESCRIPTION OF THE PLAN

### A.  Plan Treatment Of Creditors And Equity Holders

#### 1.  Unclassified Allowed Administrative Claims

Allowed Administrative Claims consist of post Filing Date Claims which are entitled to payment in full under the Bankruptcy Code.  The Debtor will pay its post Filing Date Claims in the ordinary course of business, provided however that Allowed Administrative Claims represented by fees and expenses incurred by professionals retained by the Debtor only shall be paid after the Bankruptcy Court has approved such fees and expenses.  The Debtor anticipates retaining insolvency counsel, securities counsel, tax counsel and accountants.  You will receive notice of the Debtor's retention of professionals including applications filed by professionals seeking Bankruptcy Court approval of fees and expenses.  The Debtor estimates that the total of the fees and expenses incurred by professionals retained by the Debtor in the Chapter 11 Case shall be less than $100,000.

Holders of Allowed Administrative Claims are not entitled to vote on the Plan.

#### 2.  Class 1 - Allowed Priority Claims

Class 1 Allowed Priority Claims are entitled to priority in payment pursuant to Section 507(a) of the Bankruptcy Code.  Unless otherwise agreed, Allowed Priority Claims must be paid in cash in full on the Effective Date of the Plan. Allowed Priority Claims include, but are not limited to: (1) wages, salaries or commissions earned within 180 days prior to the Filing Date of the Chapter 11 Case; (2) Claims for contributions to employee benefits plans earned within 180 days prior to the Filing Date of the Chapter 11 Case; (3) consumer deposits for goods or services, and (4) unsecured, pre Filing Date tax Claims held by government units.

The Debtor does not believe that any creditor holds an Allowed Priority Claim.  To the extent a Claim is allowed as an Allowed Priority Claim, such Allowed Priority Claim shall be paid in cash in full on the Effective Date, unless the Debtor and the holder of such Allowed Priority Claim agree to different treatment.

Class 1 is impaired under the Plan and is entitled to vote on the Plan.

#### 3.  Class 2 - Allowed Secured Claims

Class 2 consist of the holders of the Debtor's Allowed Secured Claims.  For a description of the Debtor's Allowed Secured Claims, see **Schedule 5** attached hereto.

The holders of Class 2 Allowed Secured Claims shall retain unaltered all of their legal, equitable and contractual rights as they existed immediately before the Filing Date.

Class 2 is not impaired by the Plan and is not entitled to vote on the Plan.

### 4.   Class 3 - Allowed Claims Except The Class 4 Allowed Claims

Class 3 consist of the holders of the Debtor's Allowed Claims except for the class 4 Allowed Claims.  Class 3 consists of the Debtor's pre Filing Date unsecured, non-priority unsecured creditors except for the Allowed Claims of the Debenture Holders placed in class 4 under the Plan.  Class 3 generally consists of vendors and other creditors who prior to the Filing Date extended credit to the Debtor on an unsecured basis.  The Debtor pays all vendor invoices weekly and therefore has virtually no regular business vendor accounts payable.  Many monthly operating expenses (rent, employee benefits, equipment lease payments, insurance, etc.) are invoiced in advance resulting in little to no accrued liabilities.  The Debtor has certain accounting reserves on its books but an analysis of these reserves indicates no material current liabilities.

As of the date of this Disclosure Statement, the Debtor estimates that its liquidated and non-contingent class 3 Allowed Claims total approximately $1,250,000 which includes a promissory note in the face amount of $1,100,000 payable to L Gold Corp. ("Gold").  Gold has loaned funds to the Debtor over several years.  Gold is also the holder of certain of the Debtor's equity interests and is therefore an insider.  The promissory note matures on December 31, 2011.  The maturity date of the promissory note has been extended several times over the years.  Representatives of Gold have agreed to further extend the maturity date of the promissory note for an additional 6 - 8 months beyond December 31, 2011.

The holders of Class 3 Allowed Claims shall retain unaltered all of their legal, equitable and contractual rights as they existed immediately before the Filing Date.

Class 3 is not impaired by the Plan and is not entitled to vote on the Plan.

### 5.   Class 4 - Allowed Claims Of The Debenture Holders

Class 4 consists of the Debenture Holders.  The Plan provides that the Debenture Holders are exchanging their Debentures for Preferred A Units.  The Plan treatment of class 4 is described in detail in the Memorandum attached to this Disclosure Statement as **Schedule 2**.  For a complete understanding of the Plan treatment of class 4, all Debenture Holders should carefully review the Memorandum before casting a vote on the Plan.

Class 4 is impaired under the Plan and is entitled to vote on the Plan.

### 6.   Class 5 - Allowed Interests Of The Existing Preferred Unit Holders

Class 5 consists of the Existing Preferred Unit Holders.  The Plan provides that the Existing Preferred Unit Holders are exchanging their Existing Preferred Units for Common A Units.  The Plan treatment of class 5 is described in detail in the Memorandum attached to this Disclosure Statement as **Schedule 2**.  For a complete understanding of the Plan treatment of class 5, all Existing Preferred Unit Holders should carefully review the Memorandum before casting a vote on the Plan.

Class 5 is impaired under the Plan and is entitled to vote on the Plan.

### 7.   Class 6 - Allowed Interests Of The Existing Common Unit Holders

Class 6 consists of the Existing Common Unit Holders.  The Plan provides that the Existing Common Unit Holders are exchanging their Existing Common Units for Common B Units.  The Plan treatment of class 6 is described in detail in the Memorandum attached to this Disclosure Statement as **Schedule 2**.  For a complete understanding of the Plan treatment of class 6, all Existing Common Unit Holders should carefully review the Memorandum before casting a vote on the Plan.

Class 6 is impaired under the Plan and is entitled to vote on the Plan.

### B. Other Plan Provisions

The Plan contains many other provisions.  Creditors and equity holders are encouraged to read the Plan in its entirety.  Some of the key provisions of the Plan are summarized below.

### 1.   Amended And Restated Operating Agreement

Effective with the Unit Transfer Date, the Debtor's current operating agreement shall be replaced in its entirety by the Amended and Restated Operating Agreement attached to the Memorandum as **Exhibit B**.

### 2.   Managers, Officers and Directors

The Debtor currently is managed by a management committee comprised of seven managers. Pursuant to the Debtor's current operating agreement:

a.   Three of the managers are appointed by L. Gold Corp.,

b.   Two of the managers are appointed by Gary D. Levine, President of the Debtor;

c.   One manager is appointed by the person holding the position of Chief Executive Officer (which presently is Gary Levine); and

-17-

     d.    One manager is appointed by Raymond T. Baker, who controls a company that is a significant Existing Common Unit Holder.         .

The current managers and executive officers of the Debtor and their cash compensation are set forth below. The Memorandum contains a detailed description of the non-cash compensation paid to managers and executive officers. Effective with the Unit Transfer Date, the following persons shall continue to serve as managers and executive officers until the election described below (hereafter the "Initial Members of the Management Committee").

| Name | Position | | Annual Compensation |
|------|----------|------|---------------------|
| Gary D. Levine | President, Chief Executive Officer and Manager | President Manager | $ 228,000 $ 00 |
| Justin Land | Executive Vice President | | $145,000 |
| Kimberly L. Hubbard | Executive Vice President | | $150,000 |
| Jack Keane | Chief Financial Officer and Manager | CFO Manager | $120,000 $ 00 |
| Edward C. Gruben | Manager | | $ 6,000 |
| Raymond T. Baker | Manager | | $ 6,000 |
| Gerald S. Gray | Manager | | $ 6,000 |
| Donald L. Kortz | Manager | | $ 6,000 |
| Brett Perry | Manager | | $ 6,000 |

The Amended and Restated Operating Agreement provides that:

     a.    The holders of the Preferred A Units will appoint two managers to the management committee;

     b.    The holders of the Common A Units will appoint one manager to the management committee;

     c.    The holders of the Common B Units will appoint two managers to the management committee;

      d.       Gary D. Levine will appoint one manager to the management committee; and

      e.       L. Gold Corp. will appoint one manager to the management committee.

The Initial Members of the Management Committee shall within 60 days following their initial appointments set forth above (which for avoidance of doubt shall be within 60 days following the Confirmation Date) nominate the managers that are to be appointed by the Unit Holders as described above. The Unit Holders shall then within 60 calendar days thereafter hold a meeting called for such purpose to either (i) elect such nominees, or (ii) elect other nominees as "write in" candidates at the meeting.

Thereafter, the Debtor may hold elections to elect one or more new managers as hereinafter provided: (i) within 90 days after the vacancy of a manager as a result of such manager's death, incapacitation or resignation, (ii) within 30 days after the determination of the management committee, at its discretion, to hold a meeting to elect one or more new managers to the management committee, and (iii) within 30 days following the receipt of written notification from either 33% of the holders of Preferred A Units or 33% of the holders of Common A Units or  33% of the holders of Common B Units requesting that the Debtor hold a meeting of their respective class of units to elect new manager(s) to the management committee and to remove one or more of the then existing managers elected by the respective holders of such class of units.

### 3.      Termination of Bankruptcy Stay

The automatic stay provided for in Section 362(a) of the Bankruptcy Code shall be terminated on the Effective Date.

### 4.      Discharge of Claims

Upon Confirmation, the Debtor shall receive a discharge pursuant to 11 U.S.C. Section 1141 of the Code, and all pre Filing Date Claims and Interests held by classes 1, 4, 5 and 6 shall be discharged pursuant to the Plan.

### 5.      Permanent Injunction

Pursuant to Sections 524 and 1141(d) of the Code and unless otherwise provided in the Plan, the Confirmation of the Plan and the distribution of property thereunder shall:

      a.       Void any judgment at any time obtained based on Claims or Interests held by the members of classes 1, 4, 5 and 6,

      b.       Constitute a discharge of all Claims or Interests held by the members of classes 1, 4, 5 and 6, and

c. Operate as an injunction against the initiation or continuation of any action to collect or recover Claims or Interests held by the members of classes 1, 4, 5 and 6. In particular, the members of classes 1, 4, 5 and 6 shall be permanently enjoined from taking any action directly or indirectly to enforce Claims or Interests against the Debtor, including but not limited to:

    i. Commencing or continuing any civil action, mediation, arbitration or other proceeding,

    ii. Enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, and

    iii. Creating, perfecting, enforcing or foreclosing any lien or security interest in property vesting in the Debtor on the Effective Date.

To the extent the Debtor successfully initiates an action or other proceeding in this Court or any other court of competent jurisdiction to enforce the injunctive provisions of the Plan, the Debtor shall be entitled to recover its reasonable attorney fees, filing fees and costs against the person or entity who is found to have violated such injunctive provisions.

### 6. Release Of Debtor

Neither the Debtor, nor any of its current or former members, officers, managers, directors, employees, advisors, attorneys, accountants, professionals, or agents, shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, relating to, or arising out of, the filing and administration of the Chapter 11 Case; the formulation, negotiation, or implementation of this Plan; the solicitation of acceptances of this Plan prior to or after the Filing Date; the pursuit of Confirmation of this Plan; the Confirmation of this Plan; the consummation of this Plan; or the administration of this Plan or the property to be distributed under this Plan; except for acts or omissions that are the result of fraud, gross negligence, or willful misconduct.

### 7. Vesting Of Property In The Debtor

As of the Unit Transfer Date, all property of the Chapter 11 bankruptcy estate, including without limitation causes of action, shall vest in the Debtor free and clear of all liens, claims and interests unless otherwise specifically provided for in the Plan.

### 8. Non Voting Securities

The Debtor's Amended and Restated Operating Agreement prohibits the issuance of non-voting securities.

9.      **Plan Modification**

The Debtor may modify the Plan consistent with the provisions of the Bankruptcy Code.

10.     **Retention Of Jurisdiction By The Bankruptcy Court**

The Bankruptcy Court shall retain exclusive jurisdiction for the purposes set forth in paragraph 14.1 of the Plan.

## IV.     EXECUTORY CONTRACTS

As of the date of this Disclosure Statement, the Debtor was a party to various leases and contracts wherein substantial performance remains by both parties to the lease or contract.  Such leases or contracts are defined in the Bankruptcy Code as executory contracts.  The Bankruptcy Code provides that the Debtor may assume or reject executory contracts.  If the Debtor assumes an executory contract, the Debtor shall be bound by the terms of the executory contract after Confirmation of the Plan.  In addition, any and all liens and encumbrances (and filings evidencing such liens and encumbrances) held by the other parties to such Executory Contracts shall remain unaffected by the Plan.

The Plan provides that the Debtor shall assume all executory contracts to which it is a party, including but not limited to, the executory contracts set forth in **Appendix 4** to the Plan.  The Plan provides that the other parties to such executory contracts shall retain all rights arising under such executory contracts.  The Plan also provides that Confirmation shall not impair, modify, alter, or diminish in any manner the rights of the other parties to such executory contracts.

The Bankruptcy Code provides that the Debtor must cure any defaults under executory contracts that are assumed under the Plan.  The Debtor does not believe it is in default with respect to the executory contracts assumed under the Plan.

## V.     MEANS FOR EXECUTION OF THE PLAN

The Plan shall be implemented and consummated as follows.

On the Effective Date, the Debtor shall pay in cash in full Allowed Priority Claims.

On the Effective Date, the Debtor shall pay in cash in full Allowed Administrative Claims, provided however that holders of Allowed Administrative Claims arising under Section 330 of the Bankruptcy Code (post-Filing Date professional fees) only shall be paid after the Bankruptcy Court has entered its order approving the respective Allowed Administrative Claim and such order has become a Final Order.

Effective as of the Unit Transfer Date, the Debtor shall issue:

a.     The Preferred A Units to each of the Debenture Holders subject to the tender of the original Debenture to the Debtor by each respective Debenture Holder,

b.     The Common A Units to each of the Existing Preferred Unit Holders subject to the tender of the original Existing Preferred Unit certificate to the Debtor by each respective Existing Preferred Unit Holder, and

c.     The Common B Units to each of the Existing Common Unit Holders subject to the tender of the original Existing Common Unit certificate to the Debtor by each respective Existing Common Unit Holder.

Effective as of the Unit Transfer Date, the Debtor's existing operating agreement shall be amended and restated.  A copy of the Debtor's Amended And Restated Operating Agreement is attached as **Exhibit B** to the Memorandum.

## VI.     FINANCIAL STATEMENTS AND CASH FLOW PROJECTIONS

### A.     Financial Statements

Attached hereto as **Schedule 6** is Debtor's Confidential Comparative Unaudited Financial Statements for the Nine Months Ending September 30, 2011 and September 30, 2010.

Attached hereto as **Schedule 7** is Debtor's Confidential Consolidated Financial Statements for the years ending December 31, 2010 and 2009.

### B.     Projections

Attached hereto as **Schedule 8** is Debtor's Projections of Certain Financial Data Following Consummation of the Plan.

### C.     Pro Forma Balance Sheet as of the Unit Transfer Date

Attached hereto as **Schedule 9** is Debtor's Pro Forma Balance Sheet as of the Unit Transfer Date Based on September 30, 2011 Information.

## VII.     STANDARDS FOR CONFIRMATION OF THE PLAN

### A.     Confirmation

Confirmation of the Plan means that the Bankruptcy Court has approved the Plan.  Upon Confirmation, the Plan becomes legally binding upon the Debtor, the Debtor's creditors and the

Debtor's equity holders.  If the Bankruptcy Court confirms the Plan, it will be binding upon you even if you did not vote on the Plan or you voted against the Plan.

Generally, the Plan can be approved by the Bankruptcy Court if (1) all impaired classes have voted to accept the Plan, and (2) the statutory requirements are satisfied as provided in Section 1129(a) of the Bankruptcy Code.  The standards for Confirmation of the Plan are complex.  If you have any questions concerning the legal requirements for Confirmation of the Plan, you should consult with your legal counsel

### B.    Voting

Each impaired class under the Plan constitutes a separate class for voting and distribution under the Plan.  Ballots have been transmitted with this Statement to the members of all impaired classes entitled to vote on the Plan.  For a discussion of the classes entitled to vote on the Plan and the formula to determine whether an impaired class has accept the Plan, see the Introduction to this Statement.

### C.    Confirmation Standards

Assuming that all impaired classes have accepted a plan, the Plan only can be confirmed if the Bankruptcy Court finds the standards for Confirmation have been satisfied as set forth in Section 1129(a) of the Bankruptcy Code.  Pursuant to these Confirmation standards, the Bankruptcy Court must find, among other things, that unless every member of an "impaired" class has voted to accept the Plan, the amount to be received under the Plan by each member of an impaired class is not less than the amount such class member would receive in liquidation under Chapter 7 of the Bankruptcy Code.  Also, the Bankruptcy Court must find that the Plan is feasible, that is, the Plan payments and distributions can be made and that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor.

### 1.    Feasibility

Feasibility requires a showing that the Debtor can make the Plan distributions and can continue with successful business operations such that Confirmation of the Plan will not be followed by liquidation or the need for further reorganization.

Attached hereto as **Schedule 8** is Debtor's Projections of Certain Financial Data Following Consummation of the Plan.  The foregoing projections were prepared by the Debtor.  FINANCIAL PROJECTIONS ARE BY NATURE FORWARD LOOKING AND BASED UPON ASSUMPTIONS AND THEREFORE ACTUAL RESULTS WILL VARY.  The financial projections indicate that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor.

### 2.      Comparison To Chapter 7 Liquidation

A liquidation analysis of the Debtor's assets is set forth in **Schedule 10** attached hereto.  The liquidation analysis compares the distribution to creditors and equity holders under the Plan versus the distribution to creditors and equity holders in a liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.  The liquidation analysis reflects that creditors and equity holders in impaired classes are receiving under the Plan not less than what they would have received in a Chapter 7 liquidation on the.

### VIII.   ALTERNATIVES TO CONFIRMATION OF THE PLAN

If Confirmation of the Plan is denied by the Bankruptcy Court, the Bankruptcy Court may, in its discretion: (1) permit the Debtor to modify the Plan and again seek acceptance and Confirmation of the amended Plan, (2) convert the Chapter 11 Case to a Chapter 7 Case wherein a trustee would be appointed to liquidate the Debtor's assets, or (3) dismiss the Chapter 11 Case.

### IX.     CONCLUSION

The Debtor believes the Plan is in the best interest of its creditors and equity holders and urges you to cast a vote accepting the Plan.

> Merchants Mortgage & Trust Corporation, LLC,
> a limited liability company
>
> By:     s/s Gary Levine
>         Gary Levine, President

INSOLVENCY COUNSEL:

Laufer and Padjen LLC
Joel Laufer, Esq. #7728
Robert Padjen, Esq. #14678
Attorneys for Debtor
5290 DTC Parkway, Suite 150
Englewood, Colorado  80111
Telephone (303) 830-3172
Facsimile (303) 830-3135
jl@jlrplaw.com